**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER COLBERT and JAI CRUTCHER, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 13-cv-2397 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| RUSSELL WILLINGHAM, *et al.*, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Rule 59 motion to alter or amend judgment [106]. For the reasons set forth below, Plaintiffs' motion [106] is denied.

**I.     Background**

On May 26, 2015, the Court granted Defendants' motions for summary judgment and entered judgment in favor of Defendants. [See 104, 105.] On June 23, 2015, Plaintiffs moved the court to alter or amend that judgment, arguing that the Court committed manifest errors of law by granting summary judgment against Plaintiff Crutcher on his false arrest claim and against Plaintiff Colbert on his unlawful search and unreasonable force claims.

The Court set forth the facts of this case in detail in its order on the parties' cross motions for summary judgment. [104]; *Colbert v. Willingham*, 2015 WL 3397035, at *1–3 (N.D. Ill. May 26, 2015). To briefly recap the facts relevant to this motion, in March 2011, Plaintiff Crutcher was released from prison on mandatory supervised release and began living in Plaintiff Colbert's basement. Soon thereafter, Chicago Police Officers received information from a cooperating individual who claimed to have seen Mr. Crutcher in Mr. Colbert's home with two firearms. Defendant Officer Willingham ran a name check on Mr. Crutcher, which revealed that he was on

parole for the use of a firearm. Based on this information, Officer Willingham coordinated a parole check of Mr. Crutcher's residence to ensure that he was in compliance with the terms of his supervised release.

At 6:30 a.m. on March 31, 2011—less than one month after Mr. Crutcher was released from prison—parole officers arrived at Mr. Colbert's home to conduct a compliance check. Mr. Crutcher consented to the search of his residence per the terms of his supervised release.

At some point during the search, Plaintiff Colbert arrived home. The agents informed Mr. Colbert that they were conducting a search of the premises, and they put Mr. Colbert in handcuffs while they continued their search. Mr. Colbert alleges that the officers caused damage to his home during the search by "pull[ing] out insulation, put[ting] holes in the walls, rip[ing] the couch open to search its contents, and track[ing] dog feces throughout the house." [74, ¶ 13.] Mr. Colbert did not provide any evidence of the pre-search condition of his home (absent his own testimony), and he was "unable to provide any description of any of the officers who allegedly damaged his property." [73, at 7.]

During the search, the officers encountered a locked bedroom on the main floor. Police found a 12-gauge shotgun in the closet along with approximately 100 rounds of ammunition. The police also found a box for a 40-caliber semi-automatic handgun, although they did not recover the handgun itself. Mr. Colbert admitted ownership of both firearms. After finding the firearm and ammunition, the officers formally arrested both Plaintiffs. The officers arrested Mr. Crutcher for Unlawful Use of a Weapon/Felon in Possession of a Firearm, pursuant to 720 ILCS 5.0/24–1.1(a), and Violation of Parole, pursuant to 730 ILCS 5.0/3–3–9. Mr. Colbert was released from custody on the same day of his arrest, and the criminal case against Mr. Colbert was later dismissed.

## II. Legal Standard

To prevail on a Rule 59(e) motion to amend judgment, a party must "clearly establish" that (1) the court committed a manifest error of law or fact, or (2) newly discovered evidence precluded entry of judgment. *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006); *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (same); see also *Oto v. Metropolitan Life Ins.*, 224 F.3d 601, 606 (7th Cir. 2000) (describing a manifest error of law as the "disregard, misapplication, or failure to recognize controlling precedent").

Rule 59(e) "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996). However, a motion to reconsider pursuant to Rule 59(e) should be granted only in rare circumstances. *Scott v. Bender*, 948 F. Supp. 2d 859, 865 (N.D. Ill. 2013). A party moving for reconsideration pursuant to Rule 59(e) bears the heavy burden of establishing that the court should reverse its prior judgment. See *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

A Rule 59(e) motion is not an appropriate vehicle for re-litigating arguments that the district court previously rejected, or for arguing issues or presenting evidence that could have been raised during the pendency of the motion presently under reconsideration. *Id.*; see also *Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007); *Moro*, 91 F.3d at 876; *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) (noting that a court's ruling is not a "mere first draft[], subject to revision and reconsideration at a litigant's pleasure").

**III.     Analysis**

    **A.     Plaintiff Crutcher**

Plaintiff Crutcher presents two objections to the Court's granting of summary judgment on his false arrest claim. First, Plaintiff Crutcher says that the Court erred by misstating the terms of Plaintiff's supervised release. Second, Plaintiff Crutcher says that the Court erred by assuming that violating the terms of supervised release is an arrestable offense. The Court addresses each argument in turn.

        **1.     The Terms of Plaintiff Crutcher's Mandatory Supervised Release**

Defendants arrested and charged Plaintiff Crutcher with violating the terms of his mandatory supervised release, based on the fact that he knowingly lived in a residence with a firearm. Plaintiff Crutcher sued for false arrest, arguing that Defendants lacked reasonable suspicion to make that arrest because the firearm was located in locked room to which he did not have a key. In ruling on Plaintiff Crutcher's false arrest claim, the Court assessed whether, under the totality of the circumstances, the arresting officer had reasonable suspicion[1] to believe that Mr. Crutcher had committed or was committing an arrestable offense. The Court concluded that Officer Willingham did have reasonable suspicion to believe that Mr. Crutcher knowingly resided in a home with a firearm, thereby violating the terms of his mandatory supervised release. Plaintiff Crutcher asks the Court to reconsider that decision, arguing that the terms of his mandatory supervised release only prevented him from *possessing* a firearm, not knowingly having a firearm in his residence.

---

[1] [See 75, at 5–6 ("The parties also agree that, because Crutcher was a parolee, the law of the Seventh Circuit is that the legality of this arrest turns on whether a reasonable police officer could have believed that there was 'reasonable suspicion,' *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2007), that Crutcher was subject to arrest.").]

4

The terms of Mr. Crutcher's mandatory supervised release—derived from Illinois statute 730 ILCS 5/3-3-7—were presented to him in a form entitled "Parole or Mandatory Supervised Release Agreement," which he was required to sign. [See 106, at 11.] That form lists 16 numbered "Rules of Conduct Governing Parolees or Mandatory Supervised Releasees." [*Id.*] The second rule on that list says, "You shall refrain from possessing a firearm or other dangerous weapon." [*Id.*] The final rule on that list says, "You shall also comply with any additional conditions the Prison Review Board has or may set as a condition of your parole or mandatory supervised release including, but not limited to * * *," and then there are a series of eight check boxes listing supplemental agreements that can be incorporated into the terms of a person's supervised release. In Mr. Crutcher's case, two boxes were checked: (1) Electronic Detention, and (2) Anger Management Counseling. [*Id.*] Relevant here, the "Electronic Detention Program Agreement" is a separate form (which Mr. Crutcher also signed), listing a number of additional "Terms and Conditions of the Electronic Detention Program" that were incorporated into the terms of Mr. Crutcher's mandatory supervised release. [See 106, at 13–14.] By signing the Electronic Detention Program Agreement, Mr. Crutcher agreed that he "w[ould] not use or knowingly have under [his] control or in [his] residence any firearms, ammunition, or explosive devices." [106, at 13.]

Because the Electronic Monitoring Agreement was expressly incorporated into the terms of Plaintiff Crutcher's Mandatory Supervised Release Agreement, a violation of the terms of either agreement constitutes a violation of the terms of Mr. Crutcher's mandatory supervised release. Thus, the Court applied the correct standard in assessing whether Officer Willingham had reasonable suspicion to believe that Plaintiff Crutcher knowingly had a firearm in his residence.

In addition, Plaintiff Crutcher waived this argument by failing to raise it during summary judgment briefing. See *General Auto Service Station v. City of Chicago*, 526 F.3d 991, 1006 (7th Cir. 2008) ("Arguments that could have been made earlier but are instead raised for the first time in a Rule 59 motion are waived."). Specifically, Plaintiff Crutcher directly addressed this issue in his reply brief: "Defendant Willingham points to the terms of Crutcher's parole agreement, in which Crutcher agreed to the following: 'I will not use or knowingly have under my control or in my residence any firearms, ammunition, or explosive devices.'" [97, at 2.] Plaintiff Crutcher then went on to argue that Defendant Willingham ignored the word "knowingly" in that sentence—Plaintiff *did not* argue that this requirement came from some non-binding agreement. Instead, Plaintiff Crutcher effectively conceded that this standard was a term of his parole agreement (and one that he agreed, in writing, to follow).

And to add a final nail in the coffin of Plaintiff's argument, Defendant Willingham stated in his Rule 56.1 statement of undisputed facts that Plaintiff Crutcher's "[Mandatory Supervised Release] Agreement * * * specified that Crutcher would not knowingly have under his control or in his residence any firearms or ammunition." [70, ¶ 3.] In response, Plaintiff Crutcher disputed this statement, but *only* to clarify his interpretation of the provision, not its applicability:

> As set forth in ECF #70-3, City Exhibit C, Crutcher agreed that "I will not use or knowingly have under my control or in my residence any firearms, ammunition, or explosive devices . . ." Plaintiff contends that the plain, ordinary meaning of this provision is that Crutcher would not knowingly have any firearm in his control in his residence.

[72, at 2.] In other words, Plaintiff Crutcher did not object to the fact that this term was incorporated in the terms of his mandatory supervised release—to the contrary, he adopted it. This fact was therefore deemed admitted. See, *e.g.*, *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003)); *Nehan v. Tootsie Roll Industries, Inc.*, 54 F. Supp. 3d 957, 960–61 (N.D. Ill. 2014) ("To the extent that [plaintiff]

6

fails to effectively dispute facts properly set forth and supported by [defendant], those facts are deemed admitted for the purposes of this motion."); *Smith v. Rosebud Farmstand*, 2014 WL 6886869, at *2 (N.D. Ill. Dec. 8, 2014) ("To the extent that Plaintiff's responses are improper, Defendants' fact statements will be admitted.").

### 2. Whether Violating the Terms of Release is an Arrestable Offense

Plaintiff Crutcher also says that even if knowingly having a firearm in his residence constitutes a violation of the terms of his mandatory supervised release, that is not an arrestable offense. Plaintiff Crutcher now argues that Illinois law, 730 ILCS 1003-14-2(c) does not authorize a police officer to make an arrest, as opposed to a detention pending issuance of a parole violation warrant, for a violation of mandatory supervised release.[2]

In Plaintiff Crutcher's summary judgment briefs, despite directly addressing the issue of whether Officer Willingham "could lawfully have arrested [P]laintiff Crutcher for having violated the terms of his mandatory supervised release," [75, at 10], Plaintiff Crutcher never argued that violating the terms of one's mandatory supervised release is not an arrestable offense. To be clear, this issue was front-and-center in the parties' summary judgment briefing, where Defendant Willingham's leading argument was that "[b]ecause the shotgun was in Crutcher's residence, Officer Willingham had probable cause to arrest him for a parole violation." [71, at 5; see also *id.* at 6 ("Crutcher could then be arrested for violating the terms of his parole.").] By failing to raise this argument during summary judgment briefing, Plaintiff

---

[2] But see 730 ILCS 110/11 ("[P]olice officers * * * may * * * arrest on view any probationer found by them violating any of the conditions of his or her probation * * *."). Probation is defined as "a sentence or disposition of conditional and revocable release under the supervision of a probation officer," 730 ILCS 5/5-1-18, such as those on supervised release. See *Tebbens v. Mushol*, 692 F.3d 807, 817 (7th Cir. 2012); see also *id.* at 817–18 ("[I]t is firmly established that the Fourth Amendment permits an officer to make an arrest when he or she has probable cause to believe that an individual has committed or is committing an act which constitutes an offense under state law, *regardless* of whether the state law authorizes an arrest for that particular offense.").

Crutcher waived his right to raise this issue here. See *General Auto Service Station v. City of Chicago*, 526 F.3d 991, 1006 (7th Cir. 2008) ("Arguments that could have been made earlier but are instead raised for the first time in a Rule 59 motion are waived.").

### B. Plaintiff Colbert

In the second amended complaint, Plaintiff Colbert alleged (1) a false arrest claim against all individual defendants, (2) a claim that § 8-20-040 of the Municipal Code of the City of Chicago is unconstitutional, and (3) a claim that individual defendants searched his residence in an unreasonable manner, causing damage. Defendants moved for summary judgment on all three claims, and the Court granted Defendants' motion. [See 104, at 22–28.]

In responding to Defendants' motion for summary judgment, Plaintiff Colbert claimed that he actually raised *five* claims in his complaint, not three. Specifically, he argued that he alleged an unreasonable force claim (alleging that Officer Hopkins wrestled him to the ground and took his keys) and an unlawful search claim (alleging that Officer Hopkins took his keys and went into his bedroom without permission). The Court declined to address these claims, holding that Mr. Colbert could not amend his complaint at the summary judgment stage to add, for the first time, two entirely new legal claims with entirely new factual bases. See *Whitaker v. Milwaukee Cnty., Wisc.*, 772 F.3d 802, 808 (7th Cir. 2014).

Plaintiff Colbert now argues that the Court erred by ignoring the fact that Plaintiff provided fair notice of these claims to Defendants through factual assertions made in his supplemental interrogatory answers, in his statement of additional facts, and in his deposition testimony. Plaintiff Colbert relies on the "constructive amendment" theory discussed in *Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 879 (7th Cir. 2005), arguing that "a complaint should not be limited to the precise facts alleged, but should entitle the plaintiff to prove facts consistent

with the complaint." [106, at 8.] In short, the "constructive amendment" doctrine says that it is not necessary to amend pleadings to conform to the issues being litigated in a case—*i.e.*, there is no need for a plaintiff to formally memorialize changes to a complaint when the opposing party has impliedly consented to those changes through its discovery actions.

Here, Plaintiff Colbert has not provided sufficient evidence to show that Defendants impliedly consented to the litigation of his unreasonable force and unlawful search claims. First of all, at the outset of this case, Defendants objected to Plaintiff Colbert's allegations, moving the Court pursuant to Fed. R. Civ. P. 12(e) for a more definite statement of Mr. Colbert's claims. The Court granted that motion [15], resulting in the filing of an amended complaint [16]. After Defendants unsuccessfully moved to dismiss Plaintiffs' amended complaint, Plaintiffs amended their complaint a second time [see 45]. Despite having three opportunities to do so (over the span of approximately one year), Plaintiff Colbert never included in his complaint any mention of the claims at issue here.

In addition, the Court is not persuaded by Plaintiff Colbert's contention that the parties have been litigating these claims all along. First, Plaintiff Colbert says that he provided details about his unlawful search claim in his supplemental interrogatory answers. But Plaintiff does not specify any particular interrogatory answer, and upon review, Plaintiff's answers contradict his argument:

> **Interrogatory 20**: Please state with specificity every act of misconduct by any Defendants for which you are seeking damages for [sic] in this lawsuit * * *.
>
> **Response:** The officers trashed my house and false arrested me. I am unable to identify which officers trashed my house. I believe that I was arrested by two white police officers.

[106, at 19.] Plaintiff plainly states in this response that he is only pursuing claims regarding the unreasonable search of his home and his alleged false arrest. And in these same interrogatory

9

responses, Plaintiff Colbert also describes the incident in which the police officers "took [his] keys," opened his locked bedroom door, and recovered the shotgun. [See 106, at 20.] Nowhere in that description does Plaintiff Colbert mention that he was wrestled to the ground, nor are there any factual allegations in that response that would imply the use of excessive force.

Second, Plaintiff Colbert points to four facts that he alleged in his Rule 56.1 statement as proof of his "constructive amendment." [See 74, ¶¶ 17–20 (stating that Officer Hopkins told Colbert, "I need to get into your room"; Colbert refused; Officer Hopkins wrestled Colbert to the ground and forcibly took Colbert's house keys; and Hopkins located a shotgun in a locked case in Colbert's closet).] However, Plaintiff's unilateral assertion of facts at the summary judgment in no way demonstrates that Defendants impliedly consented to the litigation of these claims throughout the litigation, as would be necessary to trigger the constructive amendment doctrine. And Plaintiff's assertion that these factual allegations provided "notice" of the claims is irrelevant—a plaintiff cannot amend his complaint at the summary judgment stage to add new legal claims with new factual bases. See *Whitaker*, 772 F.3d at 808.

Third, Plaintiff Colbert says that "Plaintiffs explored the circumstances under which Hopkins had entered the locked bedroom at Hopkins' deposition," wherein Officer Hopkins testified that Plaintiff Colbert willingly gave him the key upon request, and that no one made physical contact with Plaintiff Colbert. While these facts could relate to unreasonable force and unlawful search claims, they also relate to Plaintiff's false arrest and unreasonable search claims. Regardless, it takes more than a few lines of deposition testimony to show that the parties were "patently engaged" in litigating these claims. *Torry*, 399 F.3d at 879.

The only allegation in Plaintiffs' second amended complaint relevant to these claims is as follows:

> On March 31, 2011, defendants Willingham, Tweedle, Johnson, and Hopkins, hereinafter "searching officer defendants," searched the residence of plaintiff Colbert in an unreasonable manner, causing damage to Colbert's property."

[45, ¶ 6.] This allegation clearly relates to Plaintiff Colbert's unreasonable search claim (*i.e.*, that the officers "trashed [his] house"), which is consistent with the claims as presented in Plaintiff Colbert's interrogatory responses. Any argument that this allegation put Defendants on notice of an entirely separate unlawful search claim (or an unreasonable force claim, for that matter) is not persuasive, nor is it borne out by the parties' behavior in the approximately 20-month period between the filing of this lawsuit and the filing of the parties' summary judgment motions. This case falls squarely within the holding of *Whitaker*, and the Court concludes that it did not commit a manifest error in refusing to allow Plaintiff Colbert to add claims in response to Defendants' motion for summary judgment.

Alternatively, Plaintiff Colbert argues that "the Court should have permitted [him] to file an amendment to the complaint * * * and denied summary judgment on this portion of the claim." [106, at 8.] But Plaintiff Colbert did not ask the Court for leave to amend during the summary judgment stage, and merely asserted that he had properly raised the claims in his complaint. [See 75.] In addition, the Court has discretion in deciding whether amending is appropriate. See *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) ("[A] district judge has discretion to reject an attempt to remake a suit more than four years after it began."). It would have been well within the Court's discretion to deny any request to amend, based on the fact that Plaintiff Colbert previously had amended his complaint twice and failed to raise the claims in question, even though he has been aware of the underlying facts of these claims from the outset. See, *e.g.*, *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 706 (7th Cir. 2015) ("The well-settled rule is that a party may amend its complaint once as a matter of right, twice or more only at the district court's discretion."); *id.* at 706–07 ("[A] district court has 'broad

discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.'" (quoting *Arreloa v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008))). And the Court even granted Defendants' Rule 12(e) motion for a more definite statement, alerting Plaintiff Colbert of his pleading deficiencies and the importance of setting forth a short and plain statement of his claims. Ultimately, the Court did not commit a manifest error in failing to *sua sponte* grant Plaintiff Colbert leave to amend his complaint to add new claims at the summary judgment stage.

**IV.     Conclusion**

For the foregoing reasons, Plaintiffs' Rule 59 motion to alter or amend judgment [106] is denied.

Dated: January 19, 2016                              _____
                                                     Robert M. Dow, Jr.
                                                     United States District Judge